**COMMONWEALTH ENGINEERING COMPANY OF OHIO et al.,**
**Plaintiffs,**

**v.**

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. Nos. 558-59, 592-59.**

United States District Court
District of Columbia.

Nov. 9, 1960.

Harry A. Toulmin, Dayton, Ohio, for plaintiffs.

Jack E. Armore, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

These two actions against the Commissioner of Patents under 35 U.S.C. § 145, have been consolidated for trial and were tried together. They seek adjudications authorizing the Commissioner of Patents to issue patents on applications that he has rejected. The first case involves an application, No. 327938, filed on December 24, 1952, by Malvern J. Hiler; and the second involves an application, No. 369519, filed on July 21, 1953, by Leo J. Novak. Both applications have been assigned to the plaintiff.

Both applications relate to an important substance known as dextran, which is derived from bacteria and which has multifarious and important uses, some of which are said to be far-reaching and startling in the field of medicine and public health, as well as in industrial fields. The two applications relate to specific derivatives of dextran and processes of making the compositions in question. The first application states that the composition therein claimed relates to the conditioning of textile materials and stabilizing the textiles against shrinkage. The second application states that the composition covered by it may be used with dry spinning techniques to form artificial fibers or films, sheets, coatings, et cetera, which are durable and stable.

Both applications were denied on the ground that in the light of the prior art the steps taken by the applicants do not involve the use of the inventive faculty, but would have been obvious to persons skilled in the art. In its ultimate analysis, the decision of the Patent Office tribunals comes down to this: that the process used by the applicant has been employed in the prior art in connection with starch and with cellulose, and it was held by the Patent Office that it does not constitute invention to substitute dextran either for starch or for cellulose in the particular formula involved. This proposition is enlarged upon to a considerable extent in the decisions of the Patent Office tribunals, but in the last analysis they amount to substantially what the Court has just stated.

Thus, in respect to the Hiler application, the opinion of the Board of Examiners of the Patent Office refers to the fact that the patent to Balassa, No. 2,-588,463, issued on March 11, 1952, disclosed a reaction between starch and some of the ingredients referred to in the application. The Board stated:

"The basis of the rejections is that dextran is closely related or analogous to starch and that no invention is involved in the alkalization or etherification of the hydroxy groups in either one because the reaction mechanism is the same in both cases."

And, again, it is stated by the Board that:

"The application before it was merely an obvious extension of the known process of Balassa to another closely analogous material to produce only the expected result."

The Examiner, in his answer, had stated:

"It is also pointed out that the differences between dextran and cellulose were recognized and considered by the office in the adjudication of the patentability of the instant application. Of prime consideration were the pertinent similarities and not the immaterial differences insofar as the reactions involved."

Similarly, in respect to the second application, the Examiner stated that the products, "are deemed to be obvious derivatives of a conventional reaction and involve merely the substitution of dextran for cellulose in the reaction old in the art."

The Board, in affirming the Examiner, states that:

"Appellant has merely applied an old process to another analogous material with at least reasonable expectation of success. It is well settled that this does not constitute invention."

In addition, the Patent Office contends that insofar as the first application is concerned, there is an actual anticipation in the patent to Gaver, 2,671,779, issued

on August 8, 1950, in that in Column 7, the patentee mentions dextran as one of the divers types of substances useable as the raw material for the process of his invention, and in Column 15 he lists two of the compositions that are used by the applicant in his reactions.

It is claimed in behalf of the applicants, however, that it is fallacious to consider dextran on the one hand, and cellulose and starch on the other, as analogous to each other. Testimony was introduced in behalf of the plaintiff and was given by the president of the plaintiff, who impressed the Court as a gentleman of considerable scientific attainments, experience, and complete integrity. He testified that there is only a partial similarity and that there are wide differences between dextran on the one hand, and cellulose and starch on the other, and expressed the opinion that it would not be obvious to substitute dextran for starch or cellulose. Further, he testified that one frequently gets unexpected results by making a change in ingredients in a reaction, and that such results are unpredictable at the initial stage of an investigation. He also stated that he tried the Gaver teaching in his laboratory, but that the experiments conducted under his supervision in that direction were unsuccessful.

■ Thus we have a direct difference of opinion on a highly technical matter as between the tribunals of the Patent Office and the plaintiff's expert. A great deal of weight must necessarily be attached to the conclusions of the Patent Office. That is true of the decisions of any administrative agency. It is particularly true of the Patent Office in respect to those matters that are of a highly technical and scientific nature as this one is.

■ The Court has to rely very largely on the expertise of the Patent Office. The plaintiff's testimony came from an interested source and no matter how honest and honorable the witness was, and the Court deems him to be such, he unconsciously would have, like all human beings in his position, a partisan point of view. The burden of proof to show by a preponderance of evidence the error of the Patent Office is on the plaintiff.

■ It is not sufficient to say that experiments have been conducted to determine whether prior art disclosures would lead to the same results, but that those experiments were unsuccessful. In the first place, it has often been remarked that if a person performs an experiment and hopes that it will not be a success, no matter how honest he is, he is less likely to be successful than a person who undertakes the same experiment with a desire to succeed. But, further than that, in order to overcome the findings of the Patent Office by proof of experiments, testimony of a general kind such as was given here is not sufficient. The experiments should have been conducted in a manner precisely following the prior art disclosures, detailed notes should have been taken, and the persons who performed the experiments should have been produced as witnesses.

In the light of all these considerations, the Court reaches the conclusion that the plaintiff has not sustained the burden of proof resting upon it to establish that the action of the Patent Office was erroneous. For these reasons, the Court will render judgment for the defendant, dismissing the complaints.

Counsel will please submit proposed findings of fact and conclusions of law.

The Court wishes to express its indebtedness to counsel for both sides for the very able and, what is more, the very interesting manner in which this case was tried. I think the Court learned considerable from it.